Gants, J.
The defendant, Antoinette M. Zuliani, purchased Unit 2, 7 Arizona Terrace, at the Brookside Condominiums in Arlington on December 30, 1993. On September 1, 1994, Harry, an English mastiff, came to live with her at Unit 2 after Zuliani’s sister died. In a letter dated July 10, 1995, the Property Manager of the plaintiff Brookside Condominium Trust (“Brookside”) informed her that keeping a dog in her unit was contrary to the Master Deed and By-laws of Brookside and that her dog must be removed by July 30, 1995 or else a daily fine would be assessed against her. She did not remove her dog within that deadline. On December 14, 1995, the Trustees of Brookside voted to fine her $10 per day commencing on August 1, 1995, and continuing each day until the dog was removed from the unit. She refused to remove her dog or pay the fine.
Brookside filed suit against her on January2,1996, seeking to enjoin her from keeping the dog in the unit and demanding money damages in the amount of the unpaid fines. The request for equitable relief is now moot, since she is living elsewhere and subleasing the unit, apparently to a lessee without a dog. Both parties now move for summary judgment on the remaining counts in the complaint. After hearing and for the reasons stated below, Brookside’s motion for summary judgment is DENIED and Zuliani’s motion for summary judgment is ALLOWED.[1]
The allowance of Zuliani’s motion for summary judgment is dictated by the Supreme Judicial Court’s decision in Johnson v. Keith, 368 Mass. 316 (1975). In Johnson, a condominium unit owner lived with her dog despite Rule 5 of the Condominium’s Rules and Regulations, which forbade dogs to be kept in any unit. When the Condominium sought to enforce Rule 5 against the unit owner, the Court declared:
The problem which confronts the defendant board of managers is that by statute administrative rules and regulations may govern the details of the use *653 and operation of common areas andfacilities. G.L.c. 183, §11 (d). Rule 5, however, purports to regulate the keeping of animals not only in common areas and facilities but also “in any Unit.” Thus as an administrative rule or regulation Rule 5 undertakes to regulate conduct in individual units without statutory authorization.
Id. at 319 (emphasis in original). The Court held that, since the prohibition of dogs in a unit was found only in the Rules and Regulations, which by statute may govern only common areas and facilities, the Rule could not be enforced. Id. at 320-21. The Court in Johnson effectively “decided that restrictions relating to the use of a condominium unit as distinguished from those relating to use of the common areas and facilities must be contained in either the by-laws or master deed to be enforceable under G.L.c. 183A.” Noble v. Murphy, 34 Mass.App.Ct. 452, 454 n. 4 (1993) (emphasis in original). See also Granby Heights Association, Inc. v. Dean, 38 Mass.App.Ct. 266, 268 (1995).
In the instant case, Rule 9 of the Brookside Rules and Regulations prohibited any dog that weighs more than 25 pounds from being kept in a unit.[2] Since this Rule may govern only common areas and facilities, it cannot be enforced against Zuliani and Harry.
Brookside seeks to distinguish its situation from that in Johnson by claiming that all its Rules and Regulations were incorporated into its Master Deed and By-laws, which can govern what happens within a condominium unit. In Johnson, the Court made it clear that Rules and Regulations may be treated as condominium by-laws only when the intent to do so is unambiguous. Johnson at 320, “Where a person’s right to use his or her own property is involved, any ambiguity in an asserted restriction of this type should be construed in favor of the freedom of the property from that restriction.” Id. The language of Brookside’s Master Deed and By-laws and the conduct of its own Trustees do not demonstrate an unambiguous intent to treat its Rules and Regulations as incorporated into its Master Deed or By-laws. Indeed, it is plain that they remain Rules and Regulations, not provisions of the Master Deed or By-laws.
Brookside points first and foremost to Section 11A of the Master Deed, which provides:
All present and future owners . . . shall be subject to, and shall comply with, the provisions of this Master Deed, the Unit Deed, the Condominium Trust, the By-laws and the rules and regulations promulgated pursuant thereto, as they may be amended from time to time .. . The acceptance of a deed or conveyance or the entering into possession of any Unit shall constitute an agreement that (a) the provisions of this Master Deed, the Unit Deed, the Condominium Trust, the By-laws and the rules and regulations promulgated pursuant thereto, as they may be amended from time to time, and the said items affecting title to the Land are accepted and ratified by such owner . . . ; (b) all of such provisions shall be deemed and taken to be covenants running with the land and shall bind any person having at any time an interest or estate in such Unit, as though such provisions were recited and stipulated at length in each and every deed or conveyance or lease thereof. . .
This provision does not declare that the Rules and Regulations are incorporated into the Master Deed or the By-laws; it simply declares that the owner shall comply with the Rules and Regulations and, if she sells the property, that they are binding on the new owner. Since, by statute, Rules and Regulations can govern only common areas and facilities, this provision of the Master Deed must be read to reflect that the owner accepts the restrictions stated in those Rules and Regulations regarding her use of common areas and facilities.
Brookside also points to Section 5.6 of the Declaration of Trust, which provides, ‘Trustees do hereby adopt the initial Rules and Regulations annexed to this Declaration of Trust.” However, by the Trustees adopting the Rules and Regulations, the Declaration of Trust does not transform them into By-laws or provisions of the Declaration of Trust. Indeed, Section 5.6 provides that “[t]he Trustees may from time to time ... amend and rescind” the Rules and Regulations. Yet, the Declaration of Trust and the Master Deed, by their own terms, may be amended only with the consent of the owners of at least 75 percent of the beneficial interest of the Trust. If there was an intent to transform the Rules and Regulations into By-laws or provisions of the Declaration ofTrust or Master Deed, they would not be capable of amendment by a vote of the Trustees alone.
If there was any doubt that Brookside considered its Rules and Regulations to remain Rules and Regulations and not to have been transformed into By-laws or provisions of the Declaration of Trust or Master Deed by incorporation, one need only look to how its Trustees themselves have treated the Rules and Regulations. In February 1995, the Trustees amended Rule 9 to lower the weight limit for dogs from 25 to 15 pounds. This amendment was voted on by the Trustees alone, without obtaining the consent of the owners of 75 percent of the beneficial interest of the Trust. If the Trustees believed that the Rules and Regulations were truly incorporated into the By-laws, they would not have relied on this procedure to amend.
In conclusion, Brookside’s prohibition against keeping dogs in the condominium units is found only in the Rules and Regulations, which by statute may govern conduct only in common areas and facilities, not in individual units. Since there is plainly no unambiguous intent that the Rules and Regulations be treated as condominium By-laws or provisions of the Declaration of Trust or Master Deed, they must be treated purely as Rule and Regulations and, as such, *654 cannot be enforced to prohibit the keeping of a dog within an individual condominium unit.
ORDER
For the foregoing reasons, this Court ORDERS that the plaintiff Brookside’s motion for summary judgment is DENIED and the defendant Zuliani’s motion for summary judgment is ALLOWED as to all counts of the plaintiffs complaint.

yuliani has also filed a counterclaim against Brookside. Neither summary judgment motion speaks to the counterclaim, so allowance of Zuliani’s motion should not be construed as ordering summary judgment on the counterclaim.

There is no dispute that Harry weighed more than 25 pounds.